OPINION
{¶ 1} In November 1997, Michael Lofino and Richard Berkemeier decided to purchase a condominium apartment in Chicago, Illinois which Berkemeier had rented for some nine years. Lofino advanced the money to purchase the condominium and title was transferred to both of them as joint owners. Drafts of a promissory note, mortgage, and partnership agreement were sent to Berkemeier which he never signed. Since the property was purchased by Lofino for $45,000, Berkemeier proposed to pay Lofino for his share of the real estate ($22,500) by signing a three year promissory note for that amount at one point below prime. Berkemeier began paying interest payments on the "note" beginning in December 1997.
 {¶ 2} In September 2001, Lofino filed suit against Berkemeier contending that Berkemeier had defaulted on the loan and the agreement to pay one-half of the monthly condo minimum maintenance fees. Lofino sought $34,524.06 and attorneys fees from Berkemeier. Berkemeier answered and denied the allegation of Lofino's.
 {¶ 3} complaint. After mediation was unsuccessful, the matter was set for trial on July 21, 2003. Trial was adjourned mid-trial so the parties could discuss settlement of their dispute. On April 2, 2004, Lofino moved to enforce a settlement he contended he had reached with Berkemeier regarding the litigation.
 {¶ 4} Michael Sandner, attorney for Lofino, testified at the hearing on Lofino's motion to enforce the alleged settlement. Sandner testified that on July 21, 2003 the parties agreed that Lofino would purchase Berkemeier's half interest in the condominium unit. Sandner testified that he faxed Berkemeier's attorney, Thomas Buecker, a settlement agreement and release which he drafted pursuant to their discussions. Buecker faxed a reply to Sandner with written comments and the notation that if the changes were acceptable to Lofino he would fax it to Berkemeier for his signature. Buecker wrote the following additional remarks; to wit, "defendant advanced his equity interest in said unit" and "the works of art (to be made available for Berkemeier) are a sculpture base and stand and two paintings by Adam Segal, said items are acknowledged to be owned by the defendant and were placed in storage by plaintiff."
 {¶ 5} The next day on October 23, 2001 Sandner sent Buecker a revised release and suggested he prepare a warranty deed transferring Berkemeier's interest to Lofino. Before Berkemeier could sign the warranty deed and consummate the transaction, Sandner sent a letter on November 9, 2001 to the condominium association telling their agent that Berkemeier should be denied access to his jointly owned property because he was in default of his note obligations to Lofino. Buecker testified that the "refusal of entry" became an issue that remained unresolved.
 {¶ 6} Both parties submitted post hearing briefs to the court. Berkemeier argued in his brief that that "lock out" was an unresolved issue as well as the repossession of his art work. For his part, Lofino argued that the art work issue was not unresolved and the "lock out" issue was a collateral issue that was not material to an otherwise previously agreed settlement.
 {¶ 7} The trial court adopted Lofino's hearing summary or brief as its own and ordered Berkemeier to execute the previously tendered settlement agreement and the warranty deed in exchange for $45,000. The court also ordered the parties to agree to a time and place to exchange the defendant's art work.
 {¶ 8} It is clear that a settlement agreement is a contract designed to terminate a claim by preventing or ending litigation and that such agreements are valid and enforceable by either party. Spercel v. Sterling Industries (1972), 31 Ohio St.2d 36. These agreements may be oral or in writing and constitute binding contracts. Mack v. Polson Rubber Co. (1984), 14 Ohio St.3d 34. It is reasonably clear from the evidence presented from the parties' attorneys at the enforcement hearing that the parties had reached a settlement by the end of October 2001. There is no dispute that Lofino had agreed to the changes Berkemeier suggested to the draft settlement agreement and there had been a "meeting of the minds." Indeed, Berkemeier's counsel thought his client would sign the documents as soon as Berkemeier returned from being "out of town." We agree with Lofino that there was no dispute about Berkemeier's right to remove his artwork from the condominium. We also agree with Lofino that the time and place of accommodating Berkemeier in removing the artwork was not material to the settlement already agreed to by the parties before the written documents were executed. The timing of the "lock-out" letter was unfortunate and it was understandable that Berkmeier would be upset by it.
 {¶ 9} In enforcing the parties' agreement, the trial court has appropriately provided that the parties' should agree on a mutual time to provide Berkemeier access to the condominium to remove his artwork. The trial court's judgment that the parties settled their dispute and that their settlement should be enforced is supported by our review of the evidence. The assignment of error is overruled. The judgment of the trial court is Affirmed.
Grady, J., and Young, J., concur.
(Hon. Frederick N. Young, Retired from the Court of Appeals, Second Appellate District, Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio